IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES THUL and CYNTHIA THUL, *et al.,* | ) | |
| | ) | No. 12 C 6380 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Kennelly |
| | ) | |
| ONEWEST BANK, FSB, d/b/a INDYMAC, *et al.* | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

## Introduction

Charles Thul and his wife Cynthia have lived in their home in Elburn, Illinois for well over a decade. Shortly after they refinanced their mortgage in 2007,[1] the U.S. financial system collapsed, taking with it the housing market and the job market (particularly building-related jobs).[2]

Mr. Thul, a carpenter by trade, was squarely hit by all of these developments.[3] Initially the Thuls used their savings to make up for Mr. Thul's loss of income but, with no end in sight to the depressed housing and job market, and rather than simply "give up," in February 2009 the Thuls tried to work with OneWest to address their financial situation.[4] Specifically, they sent OneWest a completed Financial Statement, a Hardship Explanation form and other documents.[5]

Despite agreeing to identify and provide permanent HAMP loan modifications to qualified borrowers in exchange for taking TARP funds,[6] OneWest disregarded its obligations through the actions it took against the Thuls between February 2009 and August 2009.[7] Even after the Thuls gave OneWest information sufficient to enable it to avoid foreclosing on the Thuls' home and continue to get paid on the Thuls' loan, OneWest initiated foreclosure proceedings against them.[8]

In its motion to dismiss, OneWest makes factual assertions and cites matter beyond the complaint to try to show it wasn't obligated to modify the Thuls' loan under HAMP, and that it complied with HAMP directives. Putting aside that OneWest's deviations from the complaint are improper at this stage, its new "evidence" doesn't even support the arguments it's trying to make.

---

[1] Compl. ¶38, attached as Exhibit 1.
[2] Compl. ¶5-¶8.
[3] Compl. ¶39-¶40.
[4] Compl. ¶40.
[5] Compl. ¶41.
[6] Compl. ¶7-¶11, ¶13; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012).
[7] Compl. ¶41-¶55.
[8] Compl. ¶53.

For example, the two profit-and-loss statements OneWest attached its brief actually pre-date the trial modification OneWest said the Thuls had to satisfy to qualify for a permanent loan modification, and there is nothing to show that these statements had any impact on the Thuls' eligibility for a permanent modification.[9] Similarly, OneWest claims it "has consistently fulfilled its obligations under HAMP," but that claim is based on a Treasury Report from 2012, well after the events in question.[10] A year earlier, that same report found that OneWest needs "substantial improvement" in the very area of HAMP compliance at issue, *i.e.*, the "income calculation" component of "whether the servicer correctly evaluates homeowners' eligibility."[11]

OneWest initially moved to dismiss the Thuls' complaint under Rule 12(b)(1) and 12(b)(6), but the Court *sua sponte* struck the motion for raising matter beyond the complaint.[12] OneWest filed an amended brief but, at the presentment hearing, the Court noted that it seemed to raise matter from the original brief that the Court had already rejected, and the Court cautioned OneWest's counsel that sanctions would be imposed under 28 U.S.C. § 1927 if counsel elected to proceed with

---

[9] OneWest claims the profit and loss statements justified denying the Thuls a permanent loan modification because allegedly OneWest "told Mr. Thul that he would *not* receive a HAMP modification if '*the Lender determines* that any of your representations' about income 'are no longer true and correct at any time during the Trial Period.'" Brief at p. 1 (italics in original, bold omitted, underscore added). However, the profit and loss statements were for July 2009 through Sept. 2009, whereas the trial period was November 1, 2009 through January 1, 2010. Compl. ¶55 and at Ex. B, TTP p. 2. Thus, the statements don't show any change during the trial period.

[10] One West cites U.S. Treasury Department, *April 2012 Making Home Affordable Report and Servicer Assessments for First Quarter 2012* (June 6, 2012), http://www.treasury.gov/initiatives/financial-stability/results/MHA-Reports/Pages/default.aspx. *See* Brief at p. 4, fn. 6.

[11] Page 31 of U.S. Treasury Department, *April 2011 Making Home Affordable Report and Servicer Assessments for First Quarter 2011*, attached as Exhibit 2 (yellow highlighting added); full report at www.treasury.gov/initiatives/financial-stability/reports/Documents/April 2011 MHA Report Final.pdf. OneWest's argument also contradicts the complaint's facts and evidence describing OneWest's dismal HAMP compliance record. *See* Compl. ¶21-¶23 and at Ex. A (consent decree compelling OneWest to comply with HAMP directives).

[12] *See* 10/3/12 Order (Dkt. 25), attached as Exhibit 3.

the amended brief, and if in fact it contained matter the Court had already rejected.[13] Despite this admonishment, as well as a request from Plaintiffs' counsel that OneWest withdraw the amended brief, OneWest's counsel chose to proceed with it.[14] However, a comparison of the two briefs reveals that OneWest's amended brief is largely just a rearranged version of the original.[15]

Moreover, like its original brief, OneWest's amended brief fails to address the controlling authority on the issues presented, *Wigod v. Wells Fargo, N.A.*, 673 F.3d 547 (7th Cir. 2012). Heeding *Wigod* would have obviated the need to respond to much of its brief because *Wigod* disposes of the entire 12(b)(6) part of it. All that remains is the 12(b)(1) section. It superficially challenges the Thuls' standing, but actually it's a contrivance to "justify" citing matter beyond the complaint. As shown below, OneWest's motion should be denied, and Plaintiffs should be compensated under § 1927 and Rule 11 for being forced to analyze, research and respond to OneWest's amended brief.

**I.    Additional Facts to Be Taken as True in Deciding the Motion to Dismiss.**

The following additional facts from the complaint must be taken as true.[16] In February 2009, when they fell behind on their mortgage, the Thuls contacted OneWest for payment assistance and sent it a Financial Statement Hardship Explanation form and other documents.[17] Calling OneWest to follow up on their request, the Thuls were told all late fees would be waived if payment of $3,652.52 was made by March 4, 2009, which the Thuls did, bringing their account current.[18]

Soon after, the Thuls realized that they simply couldn't afford their current mortgage payment going forward, they sought bankruptcy protection and, in May 2009, they called OneWest

---

[13]    *See* 10/18/12 Transcript at p. 6, attached as Exhibit 4.

[14]    *See* 10/18/12 Transcript at p. 7; *see also* 10/18/12 Email to A.Fuchs, attached as Exhibit 5.

[15]    In lieu of trying to characterize the similarity between OneWest's original and amended briefs, a Microsoft Word "track changes" comparison of the briefs is attached as Exhibit 6.

[16]    *See Wigod*, 673 F.3d at 555 ("We must accept as true all factual allegations in the complaint.")

[17]    Compl. ¶39-¶41.

[18]    Compl. ¶42-¶43.

to discuss this development.[19] The OneWest representative told them "not to worry" and that because of the bankruptcy, OneWest would "work with them" and accept partial mortgage payments.[20] The Thuls sent a partial payment, but OneWest returned their check.[21]

On or about July 29, 2009, the Thuls filled out a HAMP loan modification application packet and faxed it to OneWest.[22] After calling to confirm OneWest's receipt of their application on several occasions during the next two weeks and being told there was no record of it, the Thuls re-sent their paperwork by overnight delivery.[23]

On or about August 17, 2009, the Thuls called OneWest again and were told that their application was being processed.[24] To facilitate this, the Thuls called OneWest every Monday to follow up, to find out whether OneWest wanted additional paperwork and, if so, to make sure they sent it within 24 hours.[25] Despite these efforts and their pending HAMP application, OneWest filed a foreclosure action against the Thuls on August 20, 2009.[26]

On September 29, 2009, the Thuls finally received a HAMP Trial Period Plan agreement ("TPP") from OneWest.[27] The TPP provided for modified payments of $1,492.13, to be due starting November 1, 2009, and lasting three months.[28] Mr. Thul signed, mailed and faxed the TPP to OneWest on September 30, 2009.[29] OneWest's First Vice President counter-signed the TPP.[30]

---

[19] Compl. ¶44-¶45.
[20] Compl. ¶46.
[21] Compl. ¶47.
[22] Compl. ¶48.
[23] Compl. ¶49-¶51.
[24] Compl. ¶52.
[25] Compl. ¶52.
[26] Compl. ¶53.
[27] Compl. ¶55.
[28] Compl. ¶55, ¶57 and at Ex. B, TPP p. 2.
[29] Compl. ¶56.

4

The Thuls timely made each payment required by the TPP.[31] Moreover, upon completing all of the required TPP payments, the Thuls did not receive a notice of rejection from OneWest.[32] Accordingly, they continued making monthly mortgage payments in the amount set by the TPP.[33]

However, at the end of June 2010, OneWest returned their eighth payment with a letter stating it wouldn't accept partial payments, and that the Thuls had to pay the entire mortgage balance in full.[34] The letter didn't address their request for a HAMP modification.[35]

Instead, at the end of August 2010, OneWest sent the Thuls another HAMP application package.[36] The Thuls again filled out the paperwork and sent it to OneWest on September 17, 2010.[37] As before, the Thuls called OneWest every Monday to check on the progress of their request and send whatever additional documentation OneWest requested.[38]

Around October 18, 2010, during one of the weekly calls, the OneWest representative told the Thuls they had improperly applied for a second HAMP modification, and that their initial HAMP request had been denied.[39] A few days later, the Thuls received a letter from OneWest stating that their loan did not qualify for HAMP because "loans that have previously started, but have not completed, a HAMP trial modification are not eligible for additional modification."[40] This statement was false because the Thuls completed the TPP, timely making each required monthly

---

30   Compl. ¶58.
31   Compl. ¶57.
32   Compl. ¶58.
33   Compl. ¶58.
34   Compl. ¶59.
35   Compl. ¶60.
36   Compl. ¶61.
37   Compl. ¶61.
38   Compl. ¶61.
39   Compl. ¶62.
40   Compl. ¶63.

payment, and five more after that.[41]

On December 9, 2010, OneWest sent the Thuls a letter that gave a different reason for denying their HAMP request.[42] It said OneWest denied their request "based on" the Net-Present-Value ("NPV") element of the HAMP calculation.[43] This letter was false because under HAMP rules the determination of whether the borrower meets the NPV test occurs <u>before</u> the borrower is sent a TPP, not after, and OneWest had already sent the Thuls a TPP.[44]

II.     **The Motion to Dismiss under Rule 12(b)(6) Should Be Denied Because the Thuls State Claims for Breach of Contract, Promissory Estoppel and Consumer Fraud.**

In *Wigod v. Wells Fargo, N.A.*, the Seventh Circuit reversed the dismissal of the same claims at issue here based on the same material facts. As here, Lori Wigod alleged that her bank signed a Service Provider Agreement obligating it to comply with HAMP directives, she asked her bank for a HAMP loan modification, her bank evaluated her to determine whether she qualified for the modification and eventually sent her a HAMP Trial Period Plan ("TPP") that required her to make certain payments for a few months, she made all of the payments and met all of the other conditions of the TPP, and yet her bank didn't give her a permanent modification.[45] The Seventh Circuit ruled that these allegations state claims for breach of contract, promissory estoppel and consumer fraud.[46]

*Wigod* was decided nearly eight months ago, it is the controlling authority on the 12(b)(6) issues raised in OneWest's motion, and OneWest was made aware of it in a similar case arising from

---

[41]   Compl. ¶57-¶58, ¶64.

[42]   Compl. ¶64.

[43]   Compl. ¶64.

[44]   Compl. ¶70, *see also Wigod*, 673 F.3d at 557 ("If the NPV was positive, however, the Treasury directives said that 'the servicer MUST offer the modification.' …. After determining the borrower was eligible, the servicer implemented a Trial Period Plan (TPP).") (citation omitted).

[45]   *See Wigod*, 673 F.3d at 558.

[46]   *See Wigod*, 673 F.3d at 555.

6

its failure to comply with its HAMP obligations.[47] Specifically, in *Fletcher v. OneWest*, 10 C 04682 (N.D. Ill.), OneWest moved to stay the case pending the Seventh Circuit's resolution of *Wigod*, and it was represented by the same firm herein.[48] Nevertheless, OneWest inexplicably fails to address *Wigod* here. *Wigod* demonstrates that the Thuls are entitled to proceed on each of their claims.

### A. Plaintiffs State a Claim for Breach of Contract.

On August 18, 2009, OneWest signed a Servicer Participation Agreement with the U.S. Treasury, thus obligating OneWest to offer and make loan modifications in accordance with HAMP directives.[49] As in *Wigod*, the Thuls provided OneWest with a HAMP loan modification application, and OneWest determined that they met the criteria and sent them a HAMP Trial Period Plan ("TPP").[50] As in *Wigod*, the Thuls' TPP states: "If I am in compliance with this Trial Period Plan (the 'Plan') and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement …"[51] As in *Wigod*, Mr. Thul returned a signed TPP, OneWest also signed the TPP, and the Thuls fulfilled the TPP's conditions.[52] Nevertheless, OneWest failed to give the Thuls a permanent modification.[53] *Wigod* says

---

[47] *See Fletcher v. OneWest Bank, FSB*, 2012 U.S. Dist. LEXIS 151541 at *9 (N.D. Ill. 2012).

[48] *See* 10-cv-04682, Dkt. 49 at ¶15 ("The issues raised by this case are identical to those pending before the Seventh Circuit Court of Appeals in *Wigod*.") OneWest has also lost two separate motions to dismiss in *Fletcher*.

[49] Compl. ¶10-¶11, ¶13; *Wigod*, 673 F.3d at 556 ("Under the terms of the SPAs, servicers agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program.")

[50] *See Wigod*, 673 F.3d at 558; Compl. ¶48-¶52, ¶55-¶56, ¶58 and at Ex. B.

[51] Compl. ¶14 and at Ex. B, TPP p. 1. (emphasis added); *Wigod*, 673 F.3d at 558 (using materially the same language). In §1 of the TPP, the borrowers essentially represent: (A) they can't afford their mortgage payments for the reasons stated in their hardship affidavit and as a result they are in default or will default, (B) they live in the property as their principal residence, (C) they have remained owners of the property since they got their loan, (D) they documented all of their income, (E) all documents they gave the lender pursuant to the TPP are true and correct, and (F) they will obtain credit counseling if the lender requires it. *See* Compl. at Ex. B, TPP pp. 1-2.

[52] Compl. ¶56-¶58, ¶70, ¶88, ¶99.

[53] Compl. ¶62-¶64.

7

"[t]hese allegations state a claim for breach of contract."[54]

In response, OneWest asserts that the Thuls didn't satisfy a condition for getting a permanent modification. It reads the TPP to state that the Thuls aren't entitled to a modification if OneWest simply "determines" they don't qualify, and that the Thuls failed this condition because at some point OneWest allegedly decided they didn't qualify. *Wigod* expressly rejects this argument.[55]

As explained in *Wigod*, under the TPP's plain terms, the lender "determines" whether the borrower qualifies for the proposed modification in the TPP <u>before</u> the lender signs and returns the TPP to the borrower because the borrower agrees to provide "documents to permit verification of all of my income …. to determine whether I qualify for the offer" and represents that "after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan <u>if</u> I qualify for the Offer...."[56] So when OneWest signed and returned the TPP to the Thuls, OneWest had already determined they qualified.[57] At that point the TPP became a unilateral offer to permanently modify the Thuls' loan that the Thuls could accept by making the monthly payments in the TPP, so long as the representations in §1 of the TPP continued to be materially true.[58] The Thuls met these conditions.[59] Thus, OneWest owed them a permanent modification.

OneWest's argument that the Thuls weren't entitled to a permanent modification if OneWest simply determined that they didn't qualify is also flawed because it incorrectly suggests the

---

[54] *Wigod*, 673 F.3d at 560-561.

[55] *See Wigod*, 673 F.3d at 562 ("Wells Fargo insists that its obligation to modify Wigod's mortgage was also contingent on its determination, after the trial period began, that she qualified under HAMP guidelines. <u>That theory conflicts with the plain terms of the TPP</u>.") (emphasis added).

[56] Compl. at Ex. B, TPP p. 1, ¶2; *Wigod*, 673 F.3d at 562 (materially identical language) (emphasis added).

[57] Compl. ¶58; and *see Wigod*, 673 F.3d at 557 ("<u>After</u> determining the borrower was eligible, the servicer implemented a Trial Period Plan (TPP).") (emphasis added).

[58] *Wigod*, 673 F.3d at 562.

[59] Compl. ¶57, ¶70, ¶88, ¶99; *Wigod*, 673 F.3d at 565 ("We must assume at the pleadings stage that Wigod met each of the TPP's conditions.")

8

TPP gave OneWest "unbridled discretion" to deny them a permanent modification.[60] This contradicts OneWest's promise in the TPP to send the Thuls a permanent Modification Agreement if they complied with the TPP's requirements and if the representations in §1 of the TPP remained true in all material respects.[61]

Even if the TPP actually gave OneWest discretion, OneWest would have been obligated to exercise that discretion in good faith.[62] Under *Wigod*, "good faith" in this context means evaluating and acting on the Thuls' modification request in accordance with HAMP directives.[63] However, the facts demonstrate that OneWest didn't act in good faith because: (a) the Thuls met all of the requirements for getting a permanent modification under HAMP, (b) OneWest ignored those requirements, (c) OneWest continued to take TPP payments from the Thuls for months after the TPP ended without telling the Thuls it wasn't going to permanently modify their loan, (d) when OneWest finally told the Thuls (at their prompting) that it wasn't going to give them a permanent modification, it gave them differing and inconsistent reasons why, and (e) each reason was false.[64] In sum, under *Wigod*, the Thuls are entitled to proceed with their breach of contract claim.

  **B.**  **Plaintiffs State a Claim for Promissory Estoppel.**

Promissory estoppel "is an alternative means of obtaining contractual relief under Illinois law."[65] "The doctrine is 'commonly explained as promoting the same purposes as the tort of misrepresentation: punishing or deterring those who mislead others to their detriment and

---

[60]  *See Wigod*, 673 F.3d at 563.

[61]  *See Wigod*, 673 F.3d at 563.

[62]  *See Wigod*, 673 F.3d at 565 (a party exercising discretion under a contract "must do so 'reasonably and not arbitrarily or in a manner inconsistent with the reasonable expectations of the parties.'"), quoting *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003).

[63]  *See Wigod*, 673 F.3d at 565 ("Although Wells Fargo may have had some limited discretion to set the precise terms of an offered permanent modification, it was certainly required to offer *some* sort of good-faith permanent modification to Wigod consistent with HAMP guidelines.")

[64]  Compl. ¶57, ¶58, ¶60-¶64, ¶88, ¶89.

[65]  *Wigod*, 673 F.3d at 566 (citation omitted).

9

compensating those who are misled."[66] The elements of this claim are: (1) an unambiguous promise to the plaintiff, (2) the plaintiff's reliance on the promise, (3) the plaintiff's reliance was expected and foreseeable by the defendant, and (4) a resulting detriment to the plaintiff.[67]

The Thuls' promissory estoppel claim is based on OneWest's promise to give them a permanent modification if they made all of the payments in the TPP and met the other eligibility requirements.[68] It is undisputed the Thuls adequately allege reliance on OneWest's promise to their detriment, and that their reliance was expected and foreseeable.[69] OneWest only disputes whether its promise was unambiguous, and whether reliance was reasonable. Specifically, it claims its promise was ambiguous and unreliable because it was "conditional." This argument fails for two reasons.

First, once again, OneWest's position is contrary to *Wigod*, which involved the same promise at issue here. Because the estoppel claims in both cases stem from the same material terms, *i.e.*, the TPP, they both involve "an <u>unambiguous</u> promise that if [the borrower] made timely payments and accurate representations during the trial period, [the borrower] would receive an offer for a permanent loan modification calculated using the required HAMP methodology."[70]

Second, OneWest's suggestion that a conditional promise can't be unambiguous or reasonably relied upon is baseless. A conditional promise can still support a promissory estoppel claim under Illinois law.[71] None of OneWest's cases hold otherwise, most don't even review Illinois law, and certainly none trump *Wigod*'s ruling that the promise at issue here is sufficient for a

---

[66] *Wigod*, 673 F.3d at 566 (citation omitted).

[67] *See Wigod*, 673 F.3d at 566.

[68] Compl. ¶98.

[69] Compl. ¶99-¶101.

[70] *Wigod*, 673 F.3d at 566 (emphasis and brackets added).

[71] *See Wigod*, 673 F.3d at 564 ("conditional promise to modify her home mortgage"); and *e.g.*, *Moore v. Ford Motor Co.*, 901 F.Supp. 1293, 1300 (N.D. Ill. 1995) ("Catanese's offer of a dealership <u>if</u> plaintiff could come up with 12 1/2% or $100,000 is not ambiguous.") (emphasis added).

promissory estoppel claim under Illinois law.[72] Thus, the Thuls' promissory estoppel claim is "adequately alleged."[73]

OneWest also argues that the promissory estoppel claim should be dismissed because its promise to give the Thuls a permanent modification is part of a contract, *i.e.*, the TPP. This argument is also contrary to *Wigod*'s unremarkable ruling a plaintiff may pursue contract and promissory estoppel claims in the alternative, even if both claims are based on the same promise.[74] In short, the Thuls' promissory estoppel claim must stand.

### C. Plaintiffs State a Claim for Consumer Fraud.

The Illinois Consumer Fraud Act ("ICFA") prohibits deceptive conduct and unfair conduct.[75] Unfair conduct is actionable even if it is not deceptive, and vice-versa.[76]

Conduct is "unfair" if it meets any of the following criteria: (1) it offends public policy, (2) it is immoral, unethical, oppressive or unscrupulous, or (3) it causes substantial injury to consumers.[77] OneWest's conduct is unfair because: (a) its refusal to give the Thuls a permanent modification violates public policy as espoused in the HAMP directives that OneWest is obligated (but failed) to follow, and (b) it is oppressive and caused substantial injury by trapping the Thuls in a loan they

---

[72] OneWest cites *Gruen Industries, Inc. v. Biller*, 608 F.2d 274 (7th Cir. 1979) (Wisc. law), *RG Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (New York law); *Lectus, Inc. v. Rainier Nat'l Bank,* 647 P.2d 1001, 1002 (Wash. 1982) (Wash. law); *McMahon Helicopter Servs., Inc. v. Mid-West Dev., L.L.C.,* 2007 WL 1828810 (Mich. App. 2007) (Mich. law, unpublished); *Continental Bank, N.A. v. Quality Mfrs., Inc.,* 1990 U.S. Dist. LEXIS 10417 at *24-*25 (N.D. Ill. 1990) (Ill. law, but it doesn't hold that a conditional promise can never support a promissory estoppel claim); *Suncraft Techs., Inc. v. Zirkon Druckmaschinen GMBH*, 2000 U.S. Dist. LEXIS 3228 at *18-*21 (N.D. Ill. 2000) (same).

[73] *Wigod*, 673 F.3d at 566.

[74] *Wigod*, 673 F.3d at 566, fn. 8 ("Wigod may preserve her promissory estoppel claim as an alternative in the event the district court or a jury later concludes as a factual matter that an enforceable contract did not exist.")

[75] *See* 815 ILCS 505/2; *Wigod*, 673 F.3d at 574-575.

[76] *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Servs., Inc.*, 536 F.3d 663, 669-670 (7th Cir. 2008).

[77] *See Windy City Metal Fabricators*, 536 F.3d at 669.

11

could no longer afford and subjecting them to a foreclosure instead of modifying their mortgage.[78]

One West argues that the Thuls' ICFA claim should be dismissed because they don't allege that OneWest engaged in a "deceptive" practice distinct from breaching its promise to give them a permanent modification. However, that argument is both irrelevant and incorrect. It is irrelevant because the Thuls separately allege an unfair practice claim which, as explained above, they are entitled to pursue regardless of whether they assert a "deceptive" practice claim.[79] OneWest's argument is incorrect because the Thuls allege OneWest engaged in deceptive practices distinct from failing to provide a permanent modification. For example, OneWest falsely told the Thuls that they didn't qualify for a permanent modification when in fact they did, and it repeatedly lied about why.[80]

OneWest's final argument is that Thuls allegedly failed to plead their ICFA claim with sufficient particularity under Federal Rule 9(b), but this argument fails in three respects. First, Rule 9(b) only pertains to claims that sound in "fraud," and thus it doesn't apply to the Thuls' ICFA claim to the extent it is based on OneWest's unfair conduct.[81]

Second, OneWest only suggests the Thuls failed to plead their damages with particularity. They don't need to. As OneWest admits, Rule 9(b)'s the particularity requirement only applies to the "who, what, where, when and how" of the deceptive practice, not the resulting injury.[82] Moreover, Rule 9 itself confirms that a plaintiff need only allege the "circumstances of the fraud" with particularity, not damages.[83] The unpublished Maryland case OneWest cites doesn't hold otherwise.

---

[78] *See* Compl. ¶16, ¶53, ¶72-¶83.

[79] *See Windy City Metal Fabricators*, 536 F.3d at 669-670.

[80] *See* Compl. ¶62-¶64, ¶70.

[81] *Windy City Metal Fabricators*, 536 F.3d at 670.

[82] *See Smith v. Short Term Loans, LLC*, 2001 U.S. Dist. LEXIS 1554 at *19 (N.D. Ill. Feb. 9, 2001) ("the federal pleading system is still a notice pleading system. Thus, more particularity is not required as to damages."), *citing Christakos v. Intercounty Title Co.*, 196 F.R.D. 496, 504 (N.D. Ill. 2000).

[83] *See* Fed. R. Civ. P. 9(b).

Third, yet again, OneWest ignores *Wigod*. As in that case the Thuls "accuse[] [OneWest] of practices that are both deceptive and unfair" and, faced with allegations similar to those presented here, *Wigod* ruled that the plaintiff stated a claim under the ICFA.[84] In short, the Thuls are entitled to proceed on their unfair and deceptive practice claims under the ICFA. OneWest's request for dismissal under Rule 12(b)(6) should be denied in its entirety.

## II. OneWest's Request for Dismissal under Rule 12(b)(1) Should Be Denied Because the Complaint Squarely Demonstrates that the Thuls Have Article III Standing.

Article III standing merely requires the existence of a "case or controversy" between the Thuls and OneWest.[85] The Seventh Circuit describes this requirement as "undemanding."[86]

To establish standing, the Thuls need only allege an injury in fact the Court can remedy that is "fairly traceable" to OneWest's conduct.[87] OneWest doesn't dispute that the Thuls allege an injury the Court can remedy, *e.g.*, the denial of a loan modification, higher loan costs, damage to their credit, and the expense of defending a foreclosure action. It only disputes whether the Thuls' injury is fairly traceable to OneWest's conduct, and it claims it isn't because the "evidence" it gratuitously attached to its brief, consisting of two profit and loss statements, allegedly shows the Thuls weren't entitled to a permanent modification.

OneWest's argument is baseless for several reasons. First, the complaint plainly alleges a causal connection between the Thuls' injuries and OneWest's actions. Specifically, the Thuls allege that OneWest's failure to grant them a permanent loan modification and its perpetuation of a foreclosure action against them led to (a) credit damage resulting from falsely reporting that their loan payments were not being made as agreed; (b) accumulating late fees and interest; and (c) the

---

[84] *See Wigod*, 673 F.3d at 574, 575 ("It is enough to allege that the defendant committed a deceptive or unfair act and intended that the plaintiff rely on that act, and Wigod has done so.")
[85] *Family & Children's Ctr., Inc. v. School City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994).
[86] *Family & Children's Ctr.*, 13 F.3d at 1058.
[87] *See Family & Children's Ctr.*, 13 F.3d at 1058.

13

costs associated with defending the foreclosure.[88] That's all they need to allege.[89]

Second, although OneWest cites cases for the idea that the Thuls may not simply rely on the complaint's allegations to establish standing if OneWest presents evidence that actually calls these allegations into question, that's only correct if its evidence shows that the basis asserted for standing "probably is false."[90] OneWest flunks this test as it doesn't even address the causal connection between Thuls' injury and OneWest's actions. OneWest's argument only goes to whether OneWest <u>is liable for</u> the harm it caused by denying the Thuls a permanent modification, not whether the denial caused the harm. In other words, even if the profit and loss statements justified denying the Thuls a permanent modification as OneWest claims (the Thuls will prove otherwise at trial), it is the denial of a permanent modification itself that caused them to incur higher loan charges, to continue to be subjected to a foreclosure action, and the other harms alleged in the complaint.[91]

OneWest deliberately conflates the Thuls' standing to sue with the merits of whether they are entitled to a permanent modification. However, the Thuls can't be required to prove the elements of their case to establish that they have standing.[92]

Finally, even if the standing "issue" could justify OneWest's premature attempt to address the merits of the case, the profit and loss statements attached to its brief don't prove OneWest's

---

[88] Compl. ¶81, ¶95, ¶101.

[89] *See Family & Children's Ctr.*, 13 F.3d at 1058 ("at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."), *citing Lujan v. Defenders of Wildlife*, 112 S.Ct. 2130, 2136-2137 (1992).

[90] *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009), *quoting Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

[91] Compl. ¶81 ("OneWest's failure to provide permanent loan modifications …. caused…")

[92] *See City of Chicago v. Atchison, Topeka, Santa Fe Railway*, 357 U.S. 77, 83 (1958) ("Transfer, on the other hand, suggests that Parmelee has no standing because the city ordinance is invalid and Transfer's operation is lawful. …. Transfer's argument confuses the merits of the controversy with the standing of Parmelee to litigate them."); *see also Bechtold v. Sprint Nextel*, 2008 U.S. Dist. LEXIS 88207 at *8-*9 (S.D. Ill. Oct. 30, 2008) ("Sprint does not believe that Bechtold will be able to produce evidence to prove that each and every defendant caused the injuries that Bechtold alleges he suffered. This is fundamentally not a standing issue.... Bechtold is not required to prove his claims.")

arguments. At best, they only purport to show that the profits of Mr. Thul's small business changed slightly over a two month period before the start of the trial period payment plan. OneWest fails to establish any basis for concluding that this even affected the Thuls' qualification for a permanent modification, let alone disqualified them. In short, there is no standing issue here.

## Conclusion

OneWest's motion should be denied and Plaintiffs should be compensated under 28 U.S.C. § 1927 and/or Rule 11 for the fees and costs they were forced to incur in connection with OneWest's repeated improper motions to dismiss. OneWest's initial brief was struck for including matter beyond the complaint. Plaintiffs' counsel asked for a Rule 16 conference to see if the issues in this case and the state foreclosure action could be resolved early-on in a global settlement. OneWest was given the opportunity to participate in a settlement conference or amend its motion, and it chose to unreasonably and vexatiously file essentially the same brief as the one stricken by the Court.

At the presentment of OneWest's amended motion, the Court provided OneWest with yet another opportunity to change directions, giving its counsel a "Miranda" warning that its amended brief was potentially sanctionable. Instead of withdrawing the amended motion, OneWest chose to force Plaintiffs to respond to it. In a subsequent meet and confer memorialized by e-mail attached as Exhibit 5, Plaintiffs' counsel also asked OneWest's counsel to withdraw the amended motion. This request was refused. Accordingly, Plaintiffs should be compensated under 28 U.S.C. § 1927 and/or Rule 11 for the fees and costs incurred in connection with OneWest's repeated, improper motions.

                Respectfully submitted,

                By: s/ Lance A. Raphael
                One of Plaintiffs' Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison Krumhorn
Michael S. Hilicki
The Consumer Advocacy Center, P.C.

180 West Washington Street
Suite 700
Chicago, IL 60602
(312) 782-5808

Christopher Kruger
The Law Offices of Christopher Kruger
2022 Dodge Avenue
Evanston, IL 60201
(847) 420-1763

16