IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES THUL AND CYNTHIA THUL, individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) No. 1:12-cv-06380 |
| v. | ) ) Judge Matthew F. Kennelly |
| INDYMAC MORTGAGE SERVICES, FSB, a division of ONEWEST BANK, FSB, | ) ) Magistrate Judge Jeffrey Cole ) |
| Defendant. | ) ) |

## COUNSEL'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE

The undersigned counsel, John H. Beisner, Jessica Davidson Miller and Andrew J. Fuchs (collectively, "Counsel") respectfully submit this response to the Court's Order to Show Cause.

Counsel apologize to the Court for not discussing *Wigod* in OneWest's opening brief. Since receiving the Court's order, Counsel have spent substantial time rereading *Wigod* and both parties' briefs, reviewing ethical and legal rulings, and consulting with colleagues who had not worked on this case. Having reflected on these matters at length, Counsel wish to tell the Court first and foremost that they are very sorry *Wigod* was not cited and distinguished in the opening brief.

Mr. Beisner and Ms. Miller further wish to clarify that they had ultimate responsibility for the legal briefing in this matter. Mr. Fuchs was neither the principal drafter of the briefs nor tasked with conducting research related to the briefs. While Mr. Fuchs reviewed the opening brief prior to its filing, he relied upon Mr. Beisner and Ms. Miller with respect to the legal content of the briefing and was not personally aware of the *Wigod* decision.

Counsel also wish to inform the Court that OneWest and the Thuls have reached an agreement to settle this litigation. Counsel (through their firm) will be contributing to the settlement amount in order to personally redress plaintiffs' counsel for responding to the motion to dismiss.

A.      **Counsel's Conduct**[1]

Counsel very much regret not having cited *Wigod* in the opening brief. Counsel wish to make clear to the Court, however, that they acted in good faith and had no intent or desire to withhold directly adverse or controlling authority from the Court, to misstate the law, or in any way to compromise the duty of candor owed to the Court. In order to explain to the Court why Counsel omitted *Wigod* from their opening brief, Counsel here recount the steps that led to that omission. Counsel wish to emphasize that their purpose in doing so is not to defend the omission or to reargue positions already rejected by the Court, but only to explain how it happened and to assure the Court that an incident like this one will not arise again.

As an initial matter, neither the undersigned nor anyone else working on the case ever sought to deceive the Court or conceal the existence of *Wigod*. Rather, counsel believed in good faith that *Wigod* was not directly adverse or controlling. Counsel held this belief because they understood *Wigod* to have held that a lender does not have "unbridled discretion" to deny or refuse to consider a permanent modification where the borrower has met all the requirements of a Trial Payment Plan ("TPP"). *See Wigod v. Wells Fargo Bank*, *N.A.*, 673 F.3d 547, 563 (7th Cir. 2012). Counsel further understood the Seventh Circuit to emphasize that the plaintiff in *Wigod* had adequately pled a breach of contract claim in part because "Wells Fargo has not

---

[1]     References in this portion of the Response to "Counsel" refer to Mr. Beisner and Ms. Miller only, because Mr. Fuchs was not aware of the *Wigod* decision at the time.

identified the specific criteria that Wigod failed to satisfy, except to say that it could not craft a permanent modification plan for her that would be consistent with its investor guidelines." *Id.* at 558.

Consistent with the *Wigod* ruling, the opening brief did not argue that OneWest had "unbridled discretion" to deny the permanent modification in this case. Rather, Counsel argued that OneWest was not obligated to offer a permanent modification where, as here, the allegations showed that certain explicit (and federally mandated) conditions set forth in the TPP were not met. More specifically, Counsel's collective view was that the plaintiffs here differed from the *Wigod* plaintiffs because they acknowledged in their Complaint that OneWest denied the permanent modification on the asserted ground that the plaintiffs did not satisfy the net present value ("NPV") test. In *Wigod,* by contrast, Wells Fargo was unable to identify any reason why the plaintiffs there failed to qualify for a permanent modification. In Counsel's view, this factual difference between the two cases was meaningful, even at the motion to dismiss stage, thereby allowing OneWest to argue that the Thuls' failure to satisfy the financial condition for a permanent modification was dispositive of their case.[2]

---

2  In addition, Counsel thought it was important that Wells Fargo did not argue in *Wigod* – as OneWest has here – that a promissory-estoppel claim may not be based on express contractual language (*See* OneWest Reply at 6-7 (citing *Wigod* briefing)), and the Court of Appeals thus did not address that issue. Instead, Well Fargo argued that the plaintiff had not sufficiently alleged a promise. (*See id.*) The Court of Appeals observed that, because the plaintiff had alleged a plausible breach-of-contract claim, there was "no gap in the remedial system for promissory estoppel to fill," but further explained that the promissory-estoppel claim could remain as an alternative allegation "in the event the district court or a jury later concludes as a factual matter that an enforceable contract did not exist." *Wigod*, 673 F.3d at 566 n.8 (citation and internal quotation marks omitted). Here, however, Counsel did not intend to argue that such claims cannot be argued in the alternative; instead, they intended to argue that promissory estoppel cannot be based on express contractual language. (*See* OneWest Mot. at 10.) Counsel believed that *Wigod* is not at odds with this proposition; indeed, the authority *Wigod* cites states that a promissory-estoppel claim can succeed where a breach-of-contract claim fails *only where consideration is the only missing element of the contract claim.* (*See* OneWest Reply at 7 & n.4 (citing *Wigod*, 673 F.3d at 566 n.8).) Counsel intended to argue that there was no enforceable promise because a condition was not satisfied – not that there was a lack of consideration. (*See* OneWest Mot. at 9-12.) For these reasons,

*(cont'd)*

3

Counsel acknowledge that the Complaint also alleges that OneWest gave "false" reasons for concluding that the Thuls were "ineligible" (Compl. ¶ 70), but this allegation appeared to Counsel to have an erroneous premise – specifically, that the NPV test could only be performed once, prior to extending the TPP, (*see id.* (alleging that "the NPV test for modification eligibility was to be done prior to extending a TPP and thus, could not be the basis for denial of the permanent modification")). Counsel's view was that the language of the TPP (which plaintiffs attached to the Complaint) made clear that a permanent modification could be denied if any representation made in support of the initial TPP application "were not true and correct as of the date [the applicant] signed th[e] Plan or are no longer true and correct at any time during the Trial Period." (Compl. Ex. B, at 2).)[3]

For all of these reasons, Counsel believed in good faith that *Wigod* was not directly adverse or controlling and did not cite the ruling in OneWest's opening brief. Counsel understand that the Court has ruled on the merits of these positions and that its decision is the law of the case. Counsel do not mean to debate the Court's ruling; their only intent is to explain their conduct. Counsel further reiterate that they regret not citing and distinguishing *Wigod* in their opening brief.

---

*(cont'd from previous page)*
Counsel again believed in good faith that they were advancing a different argument from the one addressed in *Wigod*, and that *Wigod* thus was not directly adverse or controlling. Counsel acknowledge that the Court read *Wigod* differently and rejected this proffered distinction.

[3]     The Complaint does allege that "Plaintiffs' and the class members' financial circumstances continued to be true in all material respects" (Compl. ¶ 70), but that is different from alleging that their financial circumstances did not change during the TPP period. In retrospect, Counsel's interpretation of this language in the Complaint may have been colored by the financial submissions referenced in support of the 12(b)(1) portion of the motion to dismiss, which showed a change in the Thuls' financial condition. Counsel excluded those documents from the 12(b)(6) portion of the motion per the Court's earlier admonition. Nonetheless, their views on the case were affected by them.

4

**B.      Sanctions**

Counsel take their ethical obligations, professional responsibilities and duties to the Court very seriously. Counsel further acknowledge that, in researching this response, they found a number of cases in which courts have admonished attorneys for failing to cite adverse precedent, even if they considered it distinguishable. *See, e.g.*, *Mannheim Video, Inc. v. Cnty. of Cook*, 884 F.2d 1043, 1047 (7th Cir. 1989) (criticizing counsel for not citing an adverse case even though counsel were "technically correct" that the case was not binding).

Counsel assure the Court that they will present arguably dispositive precedent in opening briefs going forward, even if they believe that such cases are distinguishable. In addition, as noted above, OneWest and the Thuls have reached a settlement in this action. Counsel (through their firm) will be contributing to the settlement amount in order to personally redress plaintiffs' counsel for responding to the motion to dismiss. Counsel respectfully urge the Court not to impose sanctions for the following reasons.

Under Rule 11, a court may "impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (7th Cir. 1990) (en banc) (a filing is sanctionable where "either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous'"). A "frivolous" filing is one "that is both baseless and made without a reasonable and competent inquiry." *Townsend*, 929 F.2d at 1362.

In light of these principles, the U.S. Court of Appeals for the Seventh Circuit has held that "'failure to cite relevant authority, whether it be case law or statutory provisions, does not alone justify the imposition of sanctions under Rule 11.'" *Thompson v. Duke*, 940 F. 2d 192, 198

(7th Cir. 1991) (quoting *United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir. 1990)). Rather, the appropriateness of sanctions turns on whether an argument is "frivolous." *Id.* (distinguishing between "an argument [that is] frivolous and therefore sanctionable" and "the omission of a citation that arguably does not control"). Other decisions are in accord, declining to find Rule 11 violations where a party had a good-faith basis to believe its argument was not foreclosed, notwithstanding its failure to cite adverse precedent. *See, e.g., International Brotherhood of Electrical Workers v. Commonwealth Edison Co.*, No. 92 C 1478, 1993 WL 68105, at *9 (N.D. Ill. Mar. 10, 1993) (union's "failure to focus on Seventh Circuit law" was "imprudent," but, "standing alone," it did "not constitute sanctionable conduct"); *Mufich v. Commonwealth Edison Co.*, No. 89 C 9566, 1992 U.S. Dist. LEXIS 16742, at *10-11 (N.D. Ill. Oct. 30, 1992) (denying motion for sanctions where there was a "good faith argument" for plaintiff's position, citing *Thompson*); *Hernandez v. Central Die Casting, Inc., Local No. 2154-19*, No. 96 C 8059, 1997 WL 627651, at *1 (N.D. Ill. Oct. 2, 1997) (Magistrate Judge ruling) (rejecting request for Rule 11 sanctions; "in spite of Plaintiff's failure to uncover the appropriate authority until he filed his reply brief, Plaintiff's motion . . . was supported by existing law or a good faith argument for the extension or modification of existing law").[4]

---

[4] Counsel note that the Seventh Circuit entered an order to show cause why sanctions should not issue under Federal Rules of Appellate Procedure 38 in *In re Hendrix*, in which all parties to the appeal failed to cite a case that, though "not identical," was adverse to and dispositive of the appellant's position and therefore doomed the appellant's arguments absent a decision to overrule it. *See* 986 F.2d 195, 200-01 (7th Cir. 1993). Ultimately, the court did not award sanctions. *See* Docket Entry, *In re Hendrix*, No. 92-1815 (7th Cir. Mar. 11, 1993).

The Seventh Circuit has also awarded sanctions in the amount of reasonable attorneys' fees incurred in defending against frivolous arguments in other appeals where the sanctioned party failed to distinguish adverse precedent even after it was cited by the opposing party. *See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1198, 1203 (7th Cir. 1987) ("Hill did not cite [adverse ruling] in his opening brief in this court, let alone argue that it either is distinguishable from this case or should be overruled. *Nor did he cite it in his reply brief, even though the railroad's answering brief cited and relied on it.* The ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist
*(cont'd)*

Counsel respectfully submit that sanctions are not warranted under this Circuit's Rule 11 standards. As described above, Counsel did not file their motion to dismiss for an "any improper purpose," Rule 11(b)(1); nor did they omit *Wigod* from their opening brief for such a purpose. Similarly, for the reasons explained above, Counsel believe that their "legal contentions [were] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Rule 11(b)(2). In short, Counsel had a principled basis to believe that *Wigod* was distinguishable from the present case, and Counsel offered nonfrivolous arguments in support of that position.[5] Thus, while Counsel deeply regret omitting a discussion of *Wigod* from their opening brief, they do not believe their conduct violated Rule 11.

With respect to the duty of candor specifically, Counsel have always understood that a party does not have an ethical obligation to cite authority if it believes in good faith that the authority is not dispositive to any of the arguments in its motion. This understanding is consistent with the plain language of the rules of professional conduct. *See* Ill. Rules of Professional Conduct 3.3(a)(2) ("A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be *directly adverse to the*

---

*(cont'd from previous page)*
is as unprofessional as it is pointless.") (emphasis added) (awarding sanctions in the amount of litigation expenses incurred in defending against the frivolous argument); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991) ("This however is the position rejected in countless decisions . . . none of which the union has deigned to cite – *even in its reply brief*, though the Sun-Times had hammered away at them in its appellee's brief.") (emphasis added) (awarding sanctions for "reasonable attorney's fees incurred in defending the appeal").

[5] Under 28 U.S.C. § 1927, a court has discretion to award excess costs, expenses, and attorneys' fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Because Counsel will be paying a portion of plaintiffs' counsel's attorneys' fees, the preceding discussion of sanctions focuses on Rule 11. For the reasons explained above, Counsel respectfully submit that their failure to cite *Wigod* in their opening brief has not multiplied the proceedings in this case unreasonably or vexatiously.

*position of the client* and not disclosed by opposing counsel.") (emphasis added).[6] It is also consistent with the views expressed by the ABA regarding the scope of the duty of candor. The ABA's Formal Ethics Opinion Number 280 long ago stated that an attorney's duty to "advise the court of decisions adverse to his client's contentions that are known to him and unknown to his adversary" was intended to cover "only decisions which were *directly* adverse." A.B.A. Formal Ethics Op. 280 (1949) (clarifying Formal Ethics Opinion 146).[7] As the Opinion further clarified, a "*directly* adverse" decision is one so conclusive of an argument that a lawyer can only "challenge [its] soundness" or "present reasons which he believes would warrant the court in not following [it]." In other words, the Opinion explains, a "distinguish[able]" opinion is not "*directly* adverse." *Id.* Counsel strongly believed that *Wigod* was not "directly adverse" for all of the reasons discussed above.

In the course of responding to the Court's Order, Counsel have come across cases that interpret analogous ethics provisions to sweep more broadly, requiring disclosure even where a good-faith argument exists that a precedent is distinguishable. In *Tyler v. State*, 47 P.3d 1095, 1105, 1108 (Alaska Ct. App. 2001), for example, the Alaska Court of Appeals read Formal Opinion 280 to cover any case "that could reasonably be interpreted as directly contrary to [a party's] position," "[e]ven assuming" the attorney has "a good faith and reasonable belief that"

---

[6] The District of Columbia Rules of Professional Conduct similarly impose a duty to disclose "authority in the controlling jurisdiction" that is "known to the lawyer to be dispositive of the question at issue and directly adverse to the position of the client." D.C. Rules of Professional Conduct 3.3(a)(3).

[7] The ABA's Formal Ethics Opinion 280 applied to Canon 22, but the duty defined by Canon 22 was substantively identical to the current Rule 3.3(a)(3). A.B.A. Informal Op. 84-1505 (noting that Rule 3.3(a)(3) "continue[s] essentially unchanged the theme of Canon 22").

that the authority "could be distinguished, . . . once he realized that the opposing attorney had failed to cite the case."[8]

Having carefully reviewed all of this authority, Counsel recognize that the far more prudent course would have been to cite and distinguish arguably adverse authority even if Counsel strongly believed that it was distinguishable. Counsel assure the Court that an incident like this one will not arise again.

## CONCLUSION

For the foregoing reasons, Counsel respectfully request that the Court not enter sanctions in this matter.

---

[8] Counsel also read the ethical rules as defining the duty to disclose in light of the need to ensure that the tribunal is aware of relevant precedent, such that the duty extends to adverse authority "that has not been disclosed by the opposing party." Ill. Rules of Professional Conduct 3.3 cmt. 4; *see* D.C. Rules of Professional Conduct 3.3 cmt. 3 (similar); A.B.A. Model Rule 3.3 cmt. 4 (similar); *see also Saturn Sys., Inc. v. Saturn Corp.*, 659 F. Supp. 868, 870 n.2 (D. Minn. 1987) ("The Code of Professional Responsibility of the American Bar Association . . . requires disclosure of adverse authority only if the authority in question is not disclosed by opposing counsel."); *cf. Tyler*, 47 P.3d at 1099 ("Neither Mr. Cyrus nor the State's attorney cited *McGhee* in their pleadings. We found the case ourselves."). Counsel for OneWest certainly never contemplated the possibility that plaintiffs' counsel would not be familiar with *Wigod* and did address the case extensively in their reply brief.

Relatedly, counsel note that in *Gonzalez-Servin v. Ford Motor Co.*, the Seventh Circuit did not issue sanctions but found that the advocacy of an attorney for the plaintiffs-appellants was "unacceptable" for failing to cite adverse precedent on appeal. 662 F.3d 931, 933-35 (7th Cir. 2011). Notably, the court emphasized (and thus seemed to find important) the fact that the plaintiffs-appellants did not cite the adverse decisions in the opening brief or their reply, even though the defendants cited the case "repeatedly." *See id.* at 933. Here, Counsel focused their reply brief in large part on why they did not believe *Wigod* to be dispositive of OneWest's motion. And in *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 703 (7th Cir. 2010) (citation omitted), the Court criticized counsel's "'imprudent and unprofessional'" behavior where counsel failed to cite "adverse controlling authority" in his opening brief and then abandoned the claim in his reply brief after the adverse authority was identified by his opponent. The Court noted that the adverse authority had rendered the claim frivolous and criticized counsel for asserting it, but the Court did not impose sanctions.

9

Dated: January 10, 2013                Respectfully submitted,

*/s/ John H. Beisner*

John H. Beisner
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7000
Fax: (202) 393-5760

*/s/ Jessica D. Miller*

Jessica Davidson Miller
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7000
Fax: (202) 393-5760

*/s/ Andrew J. Fuchs*

Andrew J. Fuchs
SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Phone: (312) 407-0700
Fax: (312) 407-0411

**CERTIFICATE OF SERVICE**

    I, Andrew J. Fuchs, hereby certify that the foregoing was served on counsel of record through the Court's ECF system on January 10, 2013.

                                                                                                           _____
                                                                                                            Andrew J. Fuchs