IN THE UNITED SATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES THUL and CYNTHIA THUL, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 12 C 6380<br>) |
| ONEWEST BANK, FSB, d/b/a INDYMAC MORTGAGE SERVICES, a division of OneWest Bank, FSB, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## **MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Court entered an order directing defendants' attorneys to show cause why they should not be sanctioned in connection with their failure to bring adverse Seventh Circuit precedent to the Court's attention in their brief supporting their motion to dismiss plaintiffs' complaint. *See Thul v. OneWest Bank, FSB*, Case No. 12 C 6380, 2013 WL 24599 (N.D. Ill. Jan. 2, 2013). The attorneys are John Beisner and Jessica Miller of the Washington, D.C. office of Skadden, Arps, Meagher & Flom, and Andrew Fuchs of the Skadden firm's Chicago office. The attorneys filed a written response and also appeared in court yesterday, as directed. The Court made comments on the record and now enters this order to summarize its findings and resolve the issue of sanctions.

First of all, the Court vacates the order to show cause as to Mr. Fuchs. In the attorneys' written response, they stated that Mr. Fuchs "was neither the principal drafter

of the briefs nor tasked with conducting research related to the briefs"; he relied on the other two attorneys concerning the legal content of the briefing; and he was not personally aware of the Seventh Circuit decision in question, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). *See* Counsel's Resp. at 1. Mr. Fuchs is an associate, and the other lawyers are senior to him. The Court accepts the attorneys' statement and vacates the show cause order as it relates to Mr. Fuchs.

In the written response, the other two attorneys, Mr. Beisner and Ms. Miller, took responsibility for filing the brief in question. They apologized for their failure to cite *Wigod* and explained why they did not do so. The attorneys also reported that in the interim, the parties had reached a settlement of the case (including a related state court case), to which the attorney's law firm will contribute "in order to personally redress plaintiffs' counsel for responding to the motion to dismiss." Counsel's Resp. at 2.

The attorneys' written response indicated that Ms. Miller, the principal drafter of the brief, and Mr. Beisner, who took ultimate responsibility for filing the brief, were aware of *Wigod* and did not cite it because they considered it distinguishable. They reaffirmed this orally in court and repeated what the Court found to be a sincere apology to plaintiffs' counsel and to the Court.

The Court acknowledges counsel's contention that *Wigod* was distinguishable but respectfully disagrees. The Court will address one example of this, which is sufficient for present purposes.

The Thuls alleged in their complaint that they were issued a "trial period plan" (TPP) under which OneWest agreed to modify their mortgage if they complied with the plan and the material representations in their application remained true. Compl. ¶ 2.

The Thuls also squarely alleged, without equivocation, that they had fully complied with the TPP and that there were no material changes in their financial status. *Id.* ¶ 3. They repeated these allegations in their breach of contract and promissory estoppel claims. *Id.* ¶¶ 88 & 99. These allegations, of course, must be taken as true on a motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Counsel argued in their opening brief that "[p]laintiffs' breach-of-contract, promissory-estoppel, and ICFA claims fail under Illinois law for a simple reason: *OneWest never promised to modify Mr. Thul's mortgage.*" Mem. in Support of Mot. to Dismiss at 7 (emphasis added). After citing Seventh Circuit cases from 1991 and 2002 and district court cases from 1995 and 2004 for the proposition that contract and promissory estoppel claims cannot stand unless there is a promise, *id.*, counsel went on to state that "*OneWest never promised Mr. Thul that his mortgage would be modified . . . .*" but rather represented that "a modification would not occur if 'the Lender determine[d] that [Mr. Thul did] not qualify of if [he] fail[e]d to meet any one of the requirements under [the] Plan.'" *Id.* at 8 (emphasis added). They went on to argue that because "OneWest told Mr. Thul that he did not, in fact, qualify for a HAMP modification . . . the explicit precondition for a HAMP modification was not satisfied." *Id.* Counsel concluded the argument with this statement: "*Because OneWest was 'not . . . obligated' to modify the mortgage under the terms of the TPP*, its failure to do so cannot give rise to liability." *Id.* at 8-9 (emphasis added). Counsel's argument was, essentially, that there was no enforceable promise to modify the mortgage because OneWest had to determine that they met the plan's requirements, and because OneWest "found" the Thuls did not meet the requirements for a modification, they could not sustain a claim.

3

This amounted to an argument that OneWest had complete discretion to determine whether to make a modification, had exercised its discretion by determining not to do so, and this was the end of the story.

The Seventh Circuit rejected this same argument, or one indistinguishable from it, in *Wigod*. *Wigod*, like this case, involved a lender's allegedly wrongful failure to modify a mortgage under the HAMP program. The Seventh Circuit dealt with an argument by a lender that the borrower's TPP "was not an enforceable offer to permanently modify Wigod's mortgage because it was conditioned on Wells Fargo's further review of her financial information to ensure she qualified under HAMP" and because "its obligation to modify Wigod's mortgage was also contingent on its determination, after the trial period began, that she qualified under HAMP's guidelines." *Wigod*, 673 F.3d at 561, 562. The Seventh Circuit squarely rejected these arguments, in a lengthy discussion that this Court need not repeat here. *See id.* at 562-65. The Seventh Circuit made it clear, however, that the bank's interpretation of the qualifying language in the TPP was unsustainable because it "turns an otherwise straightforward offer into an illusion." *Id.* at 563.

There is no appreciable difference between the argument that the Seventh Circuit rejected in *Wigod* and the argument that the attorneys for OneWest made here. Because Mr. Beisner and Ms. Miller were aware of *Wigod* and because it was "directly adverse to the position of the[ir] client," Ill. RPC 3.3(a)(2), they should have cited it. The fact that they cited, on the general contract-law issue involved, both older Seventh Circuit cases and non-binding precedent from trial courts, underscores the inappropriateness of their failure to cite *Wigod*. *See Mannheim Video, Inc. v. County of*

4

*Cook*, 884 F.3d 1043, 1047 (7th Cir. 1989) (discussing a similar scenario). Counsel may have persuaded themselves that *Wigod was* distinguishable in some way, but the Seventh Circuit has made it clear that the tactic "of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless." *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir. 1987).

Enough said about that. The question now before the Court is what further action it should take with regard to Mr. Beisner and Ms. Miller's conduct. Determination of this issue turns on not just what counsel did that got them into this position in the first place, but what has happened since then. First of all, the Court's prior ruling, which like this one identified Mr. Beisner and Ms. Miller by name, is a matter of public record. That is of no small consequence to a professional whose reputation "is his or her bread and butter." *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263. 1269 (7th Cir.1993). Second, Mr. Beisner and Ms. Miller took full responsibility for their actions, apologized sincerely, and took Mr. Fuchs off the hook. Third, OneWest promptly settled the case; the attorneys' law firm has contributed financially to the settlement; and the settlement takes into account the additional expense plaintiffs' counsel incurred due to the filing of the motion to dismiss.

The Court fully understands the impact that a finding of misconduct can have upon an attorney even without the imposition of additional sanctions. This impact was brought home to the Court by counsel's demeanor when they spoke in the courtroom and when they listened to the oral admonition that the Court rendered. Given all the circumstances, the Court's issuance of the earlier decision and this one as well as the

5

oral admonition amounts to a sufficient remedy. The Court trusts that Mr. Beisner and Ms. Miller will be more cautious in the future. The Court will impose no further sanction.

                                                                        _____
                                                                              MATTHEW F. KENNELLY
                                                                              United States District Judge

Date: January 18, 2013